LINUS M. PRICE, *Receiver*, APPELLANT, *v.* THE
UTAH AND PLEASANT VALLEY RAILWAY
COMPANY, LOUIS H. MEYER AND GEORGE A.
LOWE, *as Trustees*; WILLIAM M. SPACKMAN,
THE RIO GRANDE WESTERN CONSTRUC-
TION COMPANY, THE DENVER AND RIO
GRANDE WESTERN RAILWAY COMPANY,
THE DENVER AND RIO GRANDE RAILWAY
COMPANY AND THE PLEASANT VALLEY
COAL COMPANY, RESPONDENTS.

PLEADING—FRAUD.--The complaint set out in the case *held* to con-
tain allegations of fraud sufficiently specific, and to state facts
sufficient to constitute a cause of action.

APPEAL from a judgment of the district court of the
first district.

The complaint referred to in the opinion is as follows:
"Now comes the said plaintiff, Linus M. Price, and al-
leges and shows to the court:
"That prior to, and on the 20th day of May, A. D. 1882,
The Pacific National Bank of Boston was a national
banking association, organized and being a body corporate
under the banking laws of the United States by the said
name of 'The Pacific National Bank of Boston,' and was
located at, and doing business in, the city of Boston,
county of Suffolk, and state of Massachusetts. That on
the said 20th day of May, 1882, the said banking associa-
tion was insolvent, and unable to pay its just and legal
debts, and afterwards, on the 22nd day of May aforesaid,
the comptroller of the currency of the United States, viz:
John Jay Knox, who was then the incumbent of said
office of comptroller of the currency, became and was
satisfied that the said banking association was insolvent as
aforesaid, and that it continued so to be insolvent, and un-

able to pay its said debts, on said 22nd day of May, 1882; and therefore the said comptroller, by his order and appointment, bearing date, and made at the city of Washington, in the District of Columbia, on the day last aforesaid, in pursuance of the power and authority vested in him by law and under the provisions of Section one (1) of an act of Congress entitled 'An act authorizing the appointment of receivers of national banks and for other purposes,' approved June 30th, 1876, did appoint the said plaintiff, Linus M. Price, receiver of the said 'The Pacific National Bank of Boston,' with all the powers, duties and responsibilities given to or imposed upon a receiver under the provisions of the statutes of the United States authorizing the appointment thereof in such case. That said plaintiff thereupon gave the bond and security required of him as such receiver by the said comptroller of the currency, and afterwards, to-wit: on or about the 25th day of May, 1882, the said plaintiff, as such receiver, took possession of all and singular the property and assets of said banking association, and proceeded to act, and has ever since, and does still, act as such receiver, in pursuance of said appointment and authority.

"That among the assets of said bank, and in the possession and custody of the plaintiff, as such receiver, are ninety-nine (99) bonds of the defendant, the Utah and Pleasant Valley Railway Company, of one thousand ($1,000) dollars each, hereinafter more particularly described.

"Plaintiff further alleges: That the said defendants, the Utah and Pleasant Valley Railway Company, and the Denver and Rio Grande Western Railway Company, are each a railroad corporation created and existing under the laws of Utah territory; and that the defendants, the Rio Grande Western Construction Company, and the Denver and Rio Grande Railway Company, are corporations existing under and by virtue of the laws of the state of Colorado, and are doing business in the said Territory of Utah.

"That the said defendant, the Utah and Pleasant Valley Railway Company, was so created and organized prior to

the 14th day of September, 1878, and for the purpose as defined in its articles of incorporation of constructing, maintaining, owning and operating a line of railroad, beginning at Provo city, in Utah county, in said territory, and extending thence in a southeasterly direction by the way of Spanish Fork canyon to the 'coal fields in Pleasant Valley, in Sanpete county, in said territory,' a distance of sixty miles.

"And the plaintiff further shows that the said The Utah and Pleasant Valley Railway Company, on the said 14th day of September, 1878, being lawfully authorized to borrow such sum or sums of money as might be necessary to construct, complete and equip its said railroad, did make, and thereafter issue and negotiate, a series of nine hundred (900) of its corporate bonds of one thousand ($1,000) dollars each, bearing date the said 14th day of September, and made payable to the bearer, at the agency of the said railway company, in the city of New York, on the first day of November, 1903, and were to bear interest from date at seven per cent. per annum, payable semi-annually, on May 1st and November 1st, at the said agency. That the whole of said series of bonds had, prior to the 1st day of January, 1881, been sold by said company, and were then held by divers persons who had purchased the same in good faith, and for a valuable consideration. And plaintiff further avers that the said ninety-nine (99) bonds so held by him are a part of, and belong to, the said series of nine hundred (900) bonds so made, issued and negotiated by the said defendant, the Utah and Pleasant Valley Railway Company.

"The plaintiff further alleges that the said defendant, on said day, for the purpose of securing the payment of all the said bonds, principal and interest, according to the tenor and effect thereof, did make, execute and deliver to Henry P. DeGraaf and Theodore Wilkins, both of the city and state of New York, as trustees, a certain mortgage, or deed of trust, bearing date the said 14th day of September, 1878, whereby the said defendant railway company conveyed to the said trustees, for the purpose aforesaid, its said railway line, then in process of construction,

and thereafter to be completed, together with and in-
cluding its corporate franchise, and all other property of
whatever nature or kind then owned or thereafter to be
acquired and used with or appurtenant to the said railway
line or corporate franchise of said company; 'also all coal
mines, coal lodes and coal veins, and all buildings, offices,
tracks, and fixtures of every nature and kind used in con-
nection with said coal mines then owned, or thereafter to
be acquired, by said railway company, or *in trust for it,*
situated in township 12 and 13, S. of R. 7 E., in Sanpete
county, in said territory.'

"And plaintiff further alleges that, after the execution
and delivery of the said mortgage, or deed of trust, to-
wit: in the year 1879, George Goss purchased of the
United States, at its land office in Salt Lake City, Utah,
certain coal lands situated in said Territory of Utah, de-
scribed as and being the east half of the southeast quar-
ter and the east half of the northeast quarter of section
(8) eight, in township 13, south of range (7) seven east,
Salt Lake meredian, containing one hundred and sixty
acres; and afterwards, on the 4th day of August, 1879, a
patent from the United States, granting said coal lands to
said Goss, was duly issued and delivered to him.

"That at or about the same time, and during the said
year 1879, James Cochrane, Jr., purchased at said land
office a certain other tract of coal land, and described as
follows: The west half of the northwest quarter of sec-
tion thirty-three, and the west half of the southwest quar-
ter of section twenty-eight, in township thirteen, south of
range seven east, Salt Lake meredian, containing one
hundred and sixty acres; and afterward, on the 22nd day
of August, 1879, the said tract of coal land was granted
to the said James Cochrane, Jr., in fee by a patent there-
for, from the United States.

"That, prior to the 4th day of September, 1879, Henry
P. DeGraaf purchased, at the said land office, certain
other coal lands, situated in said territory, and described
as and being the southeast quarter of the northwest
quarter, and lot No. 5, and the south half of the northeast
quarter of section six, in the aforesaid township and

range, containing one hundred and forty-six and 48-100 acres; and afterward, on the 4th day of September, 1879, the said lands were conveyed to said Henry P. DeGraaf, in fee, by patent from the United States.

"And plaintiff further alleges that all of the aforesaid coal lands were purchased by the said George Goss, James Cochrane, Jr., and Henry P. DeGraaf in their own names, but in fact as the agents of, and for the sole and exclusive use and benefit of, the said Utah and Pleasant Valley Railway Company, and the same were paid for with the money of the said railway company, and by it furnished to the said parties for that purpose. That at the time of the purchase of the said coal lands by the said parties, as aforesaid, and for a long time thereafter, it was the purpose and intention of the said Goss, Cochrane and DeGraaf, to convey the same to the said railway company, and as plaintiff is informed, and believes, and alleges the fact to be, would have done so, but for the reason that a doubt was suggested by the counsel of said railway company as to its power under the law to own and work coal mines.

"That thereupon, on the 4th day of November, 1880, at the request of the said railway company, the said Henry P. DeGraaf and James Cochrane, Jr., by a deed duly executed and delivered, to which deed the said DeGraaf and Cochrane were the parties of the first part; Thomas C. Platt, of the state of New York, was party of the second part, and the said Utah and Pleasant Valley Railway Company was party of the third part, the said parties of the first part duly conveyed to the said party of the second part the aforesaid tracts of coal land patented to them as hereinbefore set forth; and afterwards, to-wit: on the 31st day of December, 1880, at the request of the said railway company, the said George Goss, by a deed duly executed and delivered, to which he was the party of the first part, the said Platt was the party of the second part, and the said railway company was the party of the third part, the said party of the first part duly conveyed to the said party of the second part the aforesaid tract of coal land patented to him as hereinbefore set forth.

That in and by the said deeds the said coal lands were conveyed to the said Platt, as trustee, for the sole use and benefit of the said railway company, and subject to the trusts and limitations declared and specified in said deeds as follows, to-wit:

" 'First. To hold the title, legal and equitable, to said property, and every part and parcel thereof; the possession thereof; to manage, work and improve the said premises; to sell the products of coal mining, and the said premises or any part thereof subject to or discharged of the trust declared by these presents; but only by the agency hereinafter mentioned, and pursuant to the advice and direction of the said party of the third part by its board of directors, paying all expenses incident to the trust from moneys realized from the trust property and business, and paying the net balance and residue of all moneys received from working, management or sale of said property to said party of the third part.

" 'Second. That for this purpose the board of directors of said party of the third part shall have an agency irrevocable in the name of the said party of the second part to conduct the business of working the coal mines in said premises, employing laborers, procuring supplies, paying the expense thereof from the product, making sale of the coal obtained from said property, and collecting the moneys on such sales, and accounting therefor with, and paying the same over to, said third party; that said agency shall be co-extensive with the title and trusts of said second party, as well in respect to the working, improvement and disposition of said property as in the method of doing the business. That said board, as such agent, may delegate their power to any substitute, and employ such other agents and servants as they see fit, and with such powers and salary or compensation as the said board of directors shall prescribe or agree to. That the said board, or its substitute, or its sub-agent, shall have full power to execute all the trusts hereby declared, to make, execute and deliver all contracts and deeds found necessary or convenient for that purpose; and may, at the pleasure of said board of directors, transfer and con-

vey the said property, with or without the said trusts, from the said second party, or his heirs, to another trustee or any purchaser; provided, however, that no act in the exercise of said agency shall be deemed authorized which will impose any personal liability on the said second party to be discharged otherwise than from the funds derived from the said property in the execution of the trusts hereby declared.'

"That under and by means of the said mortgage, or trust deed, bearing date the 14th day of September, 1878, and the deeds last aforesaid made to the said Thomas C. Platt, the coal lands, and all other property therein described, became and are subject to a lien to secure the payment of the aforesaid series of bonds.

"And plaintiff is informed and believes, and alleges upon and according to his information and belief, that the aforementioned and described coal lands constitute the 'coal fields' designated in the articles of incorporation of the said 'The Utah and Pleasant Valley Railway Company' as its southeasterly terminus.    That the said lands contain extensive beds of coal of an excellent quality, and are of great value.    That the said The Utah and Pleasant Valley Railway, when built; was intended for a coal road; that it extended through a mountainous and unsettled district of country, unsuited to cultivation or settlement, so as to ever furnish any considerable amount of general business or traffic for a railroad; and the sole object and inducement for the construction of the said railway was to transport the coal from the said coal lands to Provo City, from whence, by connecting lines of railway, it could be profitably supplied to the various markets of Utah and the adjacent states and territories.

That separate and apart from the ownership and control by the said railway company of the said coal fields, its railway line was of no value whatever and its earnings would have been insufficient to pay the expenses of operating it.

Plaintiff further alleges upon his information and belief that the said defendant, the Denver & Rio Grande Railway Company, was incorporated and organized under

the laws of the said State of Colorado, for the purpose
of constructing, owning and operating a railway from
Denver City, in said State, in a westerly direction to a
point on the eastern boundary line of Utah Territory,
where the same is crossed by the Valley of the White
River; and the said defendant, the Denver and Rio
Grande Western Railway Company, was organized under
the laws of the territory of Utah on the 21st day of
July, 1881, for the purpose of constructing, owning and
operating a main line of railway from a point of con-
nection with the said line of the said Denver & Rio
Grande Railway Company on the eastern boundary line
of said territory, thence in a northwesterly direction, by
the way of Provo City, to Salt Lake City and Ogden in
said territory of Utah; and thereby constituting a
through line of railway from Denver City, Colorado, to
the points last aforesaid.    Plaintiff further alleges on
information and belief, and charges the truth to be that
the said defendants, the Denver & Rio Grande Railway
Company and the Denver & Rio Grande Western Rail-
way Company, were organized by the same parties, are
composed of substantially the same stockholders, the ex-
ecutive and other general offices of both of said com-
panies are, with a few exceptions, filled by the same
persons, the said last named company being different
from the said the Denver & Rio Grande Railway Com-
pany only in name and the new formality of an organ-
ization under the laws of Utah Territory, and the entire
lines of railway of the said Denver & Rio Grande Wes-
tern Railway Company are being managed and operated
by the said the Denver & Rio Grande Railway Com-
pany, nominally as lessee, but in fact the owner and
proprietor thereof.

Plaintiff further alleges on his information and belief,
that the said defendant, the Rio Grande Western Construc-
tion Company, was incorporated under the laws of the
said State of Colorado for the pretended purpose of con-
structing railroads generally, but was in reality organ-
ized by the said defendant, the Denver & Rio Grande
Railway Company, and its officers and stockholders for

the purpose of building and otherwise acquiring railway lines and other property for the said railway company, and having the same transferred to it either directly, or to the said the Denver & Rio Grande Western Railway Company, to be by it in fact held for the use and benefit of the said the Denver & Rio Grande Railway Company. That the said last named company through and by means of the said construction company was enabled to, and did acquire and become possessed of its lines of railway and other property without being directly or openly engaged or concerned in the construction thereof or acquisition of the same from other parties. That the said construction company has at all times since it was organized been, and still is, under the absolute control, direction and management of the said last named railway company, and is identical in interest with it and the said the Denver & Rio Grande Western Railway Company.

And plaintiff further alleges, on his information and belief, that on or about the first of the year 1881, the said defendant Wm. M. Spackman was, and ever since has been, and still is the treasurer of the said the Denver & Rio Grande Railway Company, the Denver & Rio Grande Western Railway Company, and the Rio Grande Western Construction Company.

That in the location of the said line of railway of the said the Denver & Rio Grande Western Railway Company it was found that the most practicable route was through Pleasant Valley, near the said "coal fields," thence through Spanish Fork Canyon to Provo City and parallel with the railway of the said the Utah & Pleasant Valley Railway Company. That the railway of the said last named company would therefore naturally form a section of the road of the said the Denver & Rio Grande Western Railway Company. That the said fact that the line of railway of the Utah & Pleasant Valley Railway Company would naturally form a link in the said projected line of the said the Denver & Rio Grande Western Railway Company became known to the said Denver & Rio Grande Railway Company. The Denver & Rio Grande Western Railway Company, and

the Rio Grande Western Construction Company, and to their officers in the early part of the year 1881, and thereupon the said companies and their officers became and were desirous of securing the possession and ownership of the said line of railway and other property therewith connected, including the said coal fields. That the officers of the said companies, including the said defendant William M. Spackman and the defendant George A. Lowe, who was then a director in, and the vice-president of the said the Denver & Rio Grande Western Railway Company, Charles W. Schofield, who was then the president of the said the Utah & Pleasant Valley Railway Company, and divers others, their associates and confederates to plaintiff unknown, combining and confederating together to cheat and defraud the plaintiff and other holders of the said bonds of the Utah & Pleasant Valley Railway Company, and fraudulently to acquire for and appropriate to the said the Denver & Rio Grande Railway Company and the Denver & Rio Grande Western Railway Company, without adequate consideration or a just equivalent, the said railway line, coal lands and other property belonging to the said the Utah & Pleasant Valley Railway Company, procured to be purchased by the said defendant William M. Spackman a majority of the said series of nine hundred (900) bonds so as aforesaid issued by the said the Utah & Pleasant Valley Railway Company, and also a large number of unsecured promissory notes of the last mentioned company amounting in the aggregate, as plaintiff is informed and believes and alleges, to the sum of one hundred and fifty thousand ($150,000) dollars, or thereabouts.

That the said bonds and unsecured notes were purchased by the said Spackman, as plaintiff is informed and believes, with funds furnished him directly by the said Rio Grande Western Construction Company, and, as claimed and pretended by said Spackman, belonging to said Construction Company, but plaintiff avers the truth to be that the said money was actually furnished by the said Denver & Rio Grande Railway Company and the said Denver & Rio Grande Western Railway Company.

That after having purchased the said bonds and notes,

and while the same were in his possession as treasurer of the said companies as aforesaid, or one of them, the said Spackman, pretending to be personally the owner thereof, did, at the city of Philadelphia, in the State of Pennsylvania, on the 31st day of August, 1881, execute and acknowledge a written instrument bearing date the said day, whereby, after reciting that he was the holder of a majority in interest of the said series of bonds, he did in his capacity as holder of such majority in interest of the said bonds, remove the said Henry P. DeGraaf and Theodore Wilkins from their office and position as trustees under said mortgage or deed of trust given as aforesaid to secure the payment of the said bonds; and did also, at the said time and place, execute another written instrument, bearing date the said day, whereby, after making similar recitals as to his holding a majority in interest of the said bond, and reciting also the removal of the said trustees, he appointed the said defendant, George A. Lowe, and one Louis H. Meyer, trustees under said mortgage or deed of trust, in the place and stead of the said DeGraaf and Wilkins so as aforesaid removed.

That the said George A. Lowe, at the time of his said appointment as such trustee, was, and ever since has been and now is, a stockholder in the said Denver & Rio Grande Western Railway Company, and was during all of said time and is still a director in and the Vice-President of the said company, and actively engaged in promoting its interests and the interests of the said the Denver & Rio Grande Western Railway Company.

That, as the plaintiff is informed and believes, the said Louis H. Meyer was at all of said times, and for a long time prior thereto had been, intimately connected with and interested as an investor in the said Denver & Rio Grande and the Denver & Rio Grande Western Railway Companies.

Plaintiff further alleges that the said DeGraaf and Wilkins were so removed without their knowledge or consent, and without the knowledge or consent of the plaintiff and divers other persons who were at that time the holders of some of the said bonds, and without any lawful or proper

cause whatever, but on the contrary the plaintiff alleges the fact to be that the said removal was for the purpose of replacing the said DeGraaf and Wilkins by partisans of, and persons interested in the said last named companies, and as a means of furthering the said combination to defraud the plaintiff and to secure the property of the said the Utah & Pleasant Valley Railway Company at an inadequate price.

That in the further prosecution of the said confederation and combination to cheat, wrong and defraud the plaintiff and other holders of the said bonds, and to deprive them of the full benefit of their said security created and provided by the said mortgage or trust deed executed by the said the Utah & Pleasant Valley Railway Company and the said deeds of trust made to the said Thomas C. Platt, all of which are hereinbefore mentioned, the said parties so confederating and combining, pretended and falsely claimed that the said coal lands and other property mentioned in and conveyed by the said deeds to the said Platt, were not subject to any lien or incumbrance to secure the payment of the said series of bonds, and have sought and are seeking by the means hereinafter stated to prevent the application of the proceeds derived from the sale of the said coal lands and other property towards the payment of the said bonds and the interest thereon.

"That the said William M. Spackman, alleging that he was personally the owner and holder of the aforesaid unsecured promissory notes, on the 2nd day of June, 1881, brought an action on a portion of the said notes against the said Utah and Pleasant Valley Railway Company, in the district court of the third judicial district of Utah territory. That no summons was served in said action, but the said railway company, the defendant therein, by its attorneys, entered its appearance in said action on the said 2nd day of June, the same day on which the complaint therein was filed, but made no defense to the said action; and afterwards, to-wit: on the 14th day of June, 1881, a judgment by default was rendered and entered in said cause in favor of the said plaintiff and against the said defendant for the sum of one hundred and forty-

eight thousand twenty-three and 55-100ths ($148,023.55-100) dollars damages, and costs taxed at twenty-four and 25-100ths ($24.25-100) dollars.

"That afterwards, to-wit: on the 23rd day of July, 1881, the said William M. Spackman brought a certain other action in said third district court against the said Utah and Pleasant Valley Railway Company on another portion of the said unsecured promissory notes. That the summons in said action was served on the 27th day of July, 1881, upon George M. Young, as the secretary of said company, in Salt Lake county, Utah territory, by Robert Harkness.

"That the said Harkness was not at the time United States marshal for the said territory, nor sheriff of the said county of Salt Lake, and had no authority whatever to serve said summons, and the said service was void. That there was no other or further service of summons ever made in said action; the said defendant never entered its appearance therein, nor made any defense in the same; and afterwards, on the 14th day of August, 1881, a judgment therein by default was rendered and entered by the said court, in favor of the said plaintiff and against the said defendant, for the sum of five thousand three hundred and fifty-five and 85-100ths ($5,355.85-100) dollars damages, and costs taxed at twenty ($20.00) dollars. That defendant, to-wit: on the 28th day of October, 1881, the said William M. Spackman caused executions, in due form, to be issued on each of the said judgments to the United States marshal for Utah territory, and, on the 3rd day of November, 1881, the said marshal returned the said executions wholly unsatisfied, for the reason that he was unable to find any property of the said Utah and Pleasant Valley Railway Company upon which to levy the said executions. And plaintiff avers that the said William M. Spackman, at and prior to the time of the purchase of the said unsecured notes, and of the bringing of the said actions thereon, well knew that the said Utah and Pleasant Valley Railway Company owned no property whatever, save and except such as was covered by the said mortgage, or trust deed, hereinbefore mentioned, and

made by it to secure the payment of the said series of bonds; that the said property was scanty security for 'the said bonds and the accrued interest thereon, and that the said unsecured notes were absolutely worthless.    That each and every of the said facts was at all of said times well known to each and every of the said parties so as aforesaid confederating. Plaintiff further alleges that on the 3rd day of November, 1881, the said William M. Spackman brought his certain suit in the district court of the first judicial district of the territory of Utah, against the said Utah and Pleasant Valley Railway Company, upon the said judgments so secured in the third judicial district court as aforesaid, and against Thomas C. Platt, as the holder of the legal title to the above described coal lands, the property of the company last aforesaid, and by said suit sought to have said coal lands, and all the other property described in and conveyed by the said deeds to the said Platt, sold, and the proceeds thereof applied to satisfy the said judgments.    That no summons was served in said action on the said Utah and Pleasant Valley Railway Company, but, by its attorneys, its appearance was entered therein, but no defense whatever was made. That afterwards, on the 5th day of November, 1881, on motion of the attorneys for the said Spackman, the attorneys of the said Utah and Pleasant Valley Railway Company then and there appearing for and on its behalf, and consenting thereto, the said court in the last mentioned action appointed the said George A. Lowe receiver of the said coal lands, and other property described in the bill of complaint therein, with authority to take the immediate possession thereof, and, in his discretion, to carry on and work the same as coal mines.    That the said Lowe did, in pursuance of the said appointment, enter into the possession of the said property, and work and operate the same as such receiver until the 11th day of July, 1882, during which time he realized a net profit from the operation of said property of twenty-three thousand three hundred and fifty-two and 7-100ths ($23,352.07) dollars.    That in fraud of the rights of the plaintiff, the said George A. Lowe and his said confederates procured the said sum of

money to be applied toward the satisfaction of the said judgments recovered by the said Spackman, instead of having it applied towards the payment of the said series of bonds and the interest thereon, as it was his duty as trustee for the holders of said bonds to do.

"That afterwards, on the 24th day of April, 1882, a decree was entered in said cause in favor of the said plaintiff and against the said defendants, the Utah and Pleasant Valley Railway Company and Thomas C. Platt, by which it was adjudged and decreed that all and singular the property aforesaid, and described in the complaint in said action and in said decree, be sold, and the net proceeds thereof, as well as the net proceeds derived from the same in the hands of the said receiver, be applied to the payment of the said judgments in favor of the said Spackman.

"The said decree further authorized the said Lowe to carry the same into effect by making a sale of the said property. That afterwards, on the 11th day of July, 1882, the said George A. Lowe, as such receiver, sold all of the said property in one parcel to the said William M. Spackman, for the sum of forty thousand dollars, the net proceeds thereof, to-wit: the sum of thirty-nine thousand eight hundred and sixty-four 25-100ths ($39,864.25-100) dollars, being applied by the said Lowe towards the payment of the said judgments so recovered as aforesaid by the said Spackman.

"Plaintiff further alleges that, on the 12th day of November, 1881, the said defendants, George A. Lowe and Louis H. Meyer, as trustees under the aforesaid mortgage or trust deed, executed by the said Utah and Pleasant Valley Railway Company, to secure the payment of the said series of bonds, began an action in the said first district court against the said railway company to foreclose the said mortgage. That the said Lowe and Meyer, the plaintiffs in said action, in pursuance of the aforesaid confederation, fraudulently omitted to make the said Thomas C. Platt a party defendant, or to set up, plead or refer to either of the said deeds of trust made to the said Platt. That the appearance of the said Utah and Pleasant Valley

Railway Company was entered in said action, by its attorneys, on the 14th day of November, 1881, but no defense whatever was made therein. That on the said 14th day of November, on the motion of counsel of the said plaintiffs —the counsel of the said plaintiffs, the Utah and Pleasant Valley Railway Company, being present, and consenting thereto—the said George A. Lowe was, by the said court, appointed receiver in said case of all the property described in, and conveyed by, the said mortgage, or deed of trust, save and except the aforesaid coal lands and mines, and the property appurtenant thereto and used in connection therewith, with power to take possession of and operate the said railway and other property thereto belonging, with all the powers usually conferred upon receivers in like cases.

"That the said Lowe, in pursuance of such appointment, took the immediate possession of the said railway line and other property therewith connected, and operated the same as such receiver until the morning of the 13th day of June, 1882.

"On the 21st day of February, 1882, the defendant, the Utah and Pleasant Valley Railway Company, having failed to answer or demur to the said complaint, its default was entered, and a decree of foreclosure of the said mortgage, and for the sale of said railway line and other property thereto belonging, was rendered and entered by said court.

"And plaintiff further alleges, on his information and belief, that the said defendants and their confederates fraudulently concealed from the said Henry P. DeGraaf and Theodore Wilkins, the original trustees under the said mortgage, the fact that they had been removed from their position as such trustees, and that the said action to foreclose said mortgage had been instituted; and that neither of the said parties had any knowledge or information of such removal, or of the bringing of said action, until February 25th, 1882, and after the judgment and decree of foreclosure and sale had been rendered,

"That, upon obtaining such information, the said DeGraaf and Wilkins, with the least possible delay, filed their

petition in said court and cause, for leave to intervene in said action, and to be made parties plaintiff in the place and stead of the said George A. Lowe and Louis H. Meyer, and for such other relief as they and the holders of said bonds might be entitled to. That shortly after the filing of the said petition, the defendants herein, together with the officers of the said defendant companies and their associates and confederates aforesaid, did, as plaintiff is informed and believes, and charges the truth to be, enter into a fraudulent and corrupt negotiation with the said DeGraaf and Wilkins to procure their resignations as such trustees, to withdraw their said petition, and make no further opposition to the proceedings taken, or proposed to be taken, by the said Lowe and Meyer and their confederates in said action. The said negotiations ended by securing the resignations of the said DeGraaf and Wilkins as such trustees, the withdrawal by them of their said petition, and a cessation of all further opposition in said action. And plaintiff, upon his information and belief, further alleges: That said DeGraaf and Wilkins were, in pursuance of the said negotiation, paid money or other valuable consideration for their said resignation as such trustees, and the withdrawal of their said petition, and that said money and other valuable property so paid them was the money and property of the said defendants, the Denver and Rio Grande Railway Company and the Denver and Rio Grande Western Railway Company, and was furnished by them for that purpose.

"That in and by said decree of foreclosure and sale, the said George A. Lowe and Louis H. Meyer were required, in default of payment of the said bonds and the interest thereon, to sell the said railway, franchises and other property included in, and conveyed by, the said trust deed or mortgage, and afterward, on the 12th day of June, 1882, in pursuance of the said decree, the said property and franchises were sold at Provo city, Utah territory, by the said defendant, George A. Lowe, personally, who was present and conducted said sale. That said property was struck off, and sold to the defendant, William M. Spackman, for the sum of two hundred and fifty thousand

($250,000) dollars, but for the sole use and exclusive benefit of the said defendant, the Denver and Rio Grande Western Railway Company; and the money and bonds used by the said Spackman in paying the said purchase price for said property were the money and bonds of the said railway company, and were furnished by it to the said Spackman for that purpose.

"Plaintiff further alleges that, in pursuance of· the said sale, and immediately thereafter, the said George A. Lowe, as receiver as aforesaid of said railway and other property, delivered the possession thereof directly to the said Denver and Rio Grande Western Railway Company, as the owner thereof, the said Spackman never receiving or having the possession thereof, and said company from thence until it leased the same to the said Denver and Rio Grande Railway Company, as hereinbefore stated, remained in the possession of all of the said property, using and operating the same, and applying the proceeds thereof to its own use and benefit. That the said sale was made to the said Spackman for the use and benefit of the said Denver and Rio Grande Western Railway Company, in pursuance of the aforesaid combination to defraud the plaintiff and other holders of the said bonds, and with the knowledge, consent, acquiescence and procurement of the said George A. Lowe and the said Louis H. Meyer. That the sale of said property was in one parcel, and the said coal lands were nominally included in said sale, but the said Spackman at the time gave notice that he did not claim any interest in said lands under said purchase, but claimed them adversely under the suit brought by him upon the said judgments, and hereinbefore set forth.

"And plaintiff further alleges that the said price paid for the said property was grossly inadequate, and that the said property and franchises are worth at least three times the sum for which they were sold, which fact was, at the time of said sale, well known to each and every of the said defendants. Plaintiff further says that, in the event of a re-sale of said property, he will bid and pay, or cause to be bidden and paid, the sum of seven hundred and fifty thousand dollars for the said property, and offers, if re-

quired by the court, to give good and sufficient security
for the bidding and payment of the said sum for the said
property.

That plaintiff had no knowledge or information what-
ever of the pendency of said suit to foreclose the said
mortgage until after the said foreclosure sale. That he re-
sides at Boston, in the state of Massachusetts, and has
never been within the territory of Utah. That the said
defendants, at all the times aforesaid, well knew where the
plaintiff's residence and place of business were, and that
he held the said ninety-nine bonds, and that they fraudu-
lently concealed from him the pendency of said suit and
the proceedings taken thereunder. Plaintiff further al-
leges that after it received the possession of the said rail-
way line and other property as aforesaid, to-wit: on or
about the first day of October, 1882, and from thence un-
til the first day of April, 1883, the said Denver and Rio
Grande Western Railway Company and the Denver and
Rio Grande Railway Company have torn up and destroyed
a large portion of the said railway track, viz: about twen-
ty-five miles thereof, beginning at Clear Creek station and
extending thence easterly for the distance aforesaid, and by
said means have committed great waste upon the said
property, to the loss and injury and damage of the plain-
tiff and the other holders of said bonds in the sum of two
hundred thousand dollars. And plaintiff further alleges
upon his information and belief, that said last mentioned
railway companies will, unless restrained by an injunction
issued out of this court, tear up and destroy other portions
of said railway and commit further waste upon said estate
and property.

Plaintiff further alleges that on the 19th day of Decem-
ber, 1882, the said court on the application of the said
George A. Lowe and Louis H. Meyer, entered its order
and decree approving and confirming the said sale of the
said railway, franchises and other property.

Plaintiff further alleges that the said defendant, William
M. Spackman, purchased the said coal lands and other
property therewith connected as the agent of and for the
sole use and benefit of the said Denver and Rio Grande

Western Railway Company, and said company by its offi-
cers and agents took the immediate possession and con-
trol of the said coal mines, lands and property, and worked
and operated the same and appropriated the profits derived
therefrom to its own use until the organization of the said
defendant the Pleasant Valley Coal Company as a corpora-
tion under the laws of the said territory.   That said com-
pany was incorporated under the said laws on or about the
month of September, 1882, and thereupon the said coal
lands were conveyed by the said Spackman to the said
company, since which time said mines have been worked
and operated in the name of the said coal company.   But
plaintiff alleges the truth to be that said coal company was
so incorporated at the instance and under the direction of
the said Denver and Rio Grande and Denver and Rio
Grande Western Railway Companies and their officers.
That the stockholders and officers of the said coal com-
pany are selected from and composed of a portion of the
stockholders and officers of the said railway companies;
that it has an independent capital, that it is worked sub-
ject to the control and direction of the said railway com-
panies, that it is identical in interest with and its property
actually belongs to said companies.   That prior to and at
the time of its organization each and every of its stock-
holders had full knowledge of all the facts herein alleged.

Plaintiff further alleges that the said defendants, Wil-
liam M. Spackman, George A. Lowe and Louis H. Meyer,
employed the same attorneys in their behalf in all of the
aforesaid actions in which they or either or any of them
were plaintiffs, and who were also during the whole of said
time and are still the attorneys of the said defendants the
Denver and Rio Grande and the Denver and Rio Grande
Western Railway Companies.   In consideration of all the
matters aforesaid, and inasmuch as plaintiff is remediless
in the premises by the strict rules of law, and is relievable
only in a court of equity, the plaintiff prays the aid of this
court that the said order and decree of the said court in
the said action to foreclose the said mortgage or deed of
trust, approving and confirming the sale of the said rail-
way and franchise and other property therewith connected,

be vacated, set aside and held for naught; that the said sale
of the said railway line, franchise and other property,
made on the said 12th day of June, 1882, by the said
George A. Lowe and Louis H. Meyer, in pursuance of the
said decree of foreclosure in the said action, be adjudged
and decreed to be fraudulent and void as against this plain-
tiff, and that the same be vacated and set aside. That a
re-sale of all of the said property described in and con-
veyed by the said mortgage or deed of trust, including said
coal lands and mines and all property thereto appurtenant,
be decreed, and that reasonable notice of such sale be
given. That an accounting be had of the waste and dam-
age committed upon said property by the said defendants,
the Denver and Rio Grande and Denver and Rio Grande
Western Railway Companies, and that judgment be rend-
ered against them for the amount thereof. That an in-
junction be granted herein, directed to the said defendants,
restraining and enjoining them, their officers, agents, ser-
vants, and all other persons acting by, through or under
them, or either of them, from committing any further
waste upon the said property and estate, and also an in-
junction commanding, enjoining and restraining each and
every of the parties aforesaid, from selling, transferring,
or disposing of any of the property mentioned in or con-
veyed by the said trust deed, pending the hearing of this
cause, and until the further order of the court in the prem-
ises, and that the plaintiff have all such other and further
relief in the premises as to the court may seem equitable,
including his costs in this behalf."

The other facts sufficient appear in the opinion.

*Messrs. Williams & Young,* for appellants.

That *any* interest of the trustees or either of them, in
the purchase of the trust property, renders the sale void-
able, and at the option of the *cestui qui trust,* will be set
aside as a matter of course is the firmly established doc-
trine of equity: 4 Kent's Comm. 12th Ed. 438 and note C;
*Michoud* v. *Girod,* 4 How. 503; 2 Jones on Mortgages,
Secs. 1876, 1877, 1878; *Wormly* v. *Wormly,* 8 Wheat. 421;

*Dorsey* v. *Dorsey*, 6 Amer. Dec.. 506; *Armstrong* v. *Campbell*, 24 Amer. Dec. 556; *Devaue* v. *Fanning*, 2 Johns. Ch. Cases, 252; *For* v. *Mackreth*, 1 Eq. Lead Cases, 188, also notes and cases cited, especially pp. 238-9 and 240-3.

*Stephen* v. *Beall*, 22 Wall.. 329; 2 Pom. Eq. Juris. Secs. 956-7-8: 1 Eq. Lead Cases, 241, and cases there cited.

*Goodlin* v. *Cin. & Whitewater Canal Co.*, 18 O. St. 169.

A stockholder in a corporation is interested in its property: 3 Pom. Eq. Jur. Sec. 1095 and note.

The inadequacy of the price for which the property was sold, if not in itself insufficient to warrant setting aside the sale, is of the utmost importance, when considered in connection with the other averments of the bill.


*Messrs. Bennett, Harkness & Kirkpatrick,* for respondents.


The main point urged against the sale is, that Lowe, being an officer and stockholder of the D. & R. G. Western Railway Company, and being also trustee to make the sale, occupied a fiduciary relation which prohibited him from selling to Spackman.

The fact that Lowe was an officer of the railroad company is immaterial, unless at the time of the sale he had an agency from the company, or was acting in its behalf in respect to it: 88 N. Y., page 1; 91 U. S. 587; 34 Ohio St., 450; 100 U. S. 605; 56 Iowa, 178.

The direction of the court was mandatory and equivalent to a power of sale, and under a power a mortgagee may himself sell, or purchase, or do both: 21 Cal., 329; 45 N. Y. 71; 118 Mass. 554.

As a stockholder in the railway company he had no interest in its property, or the proceeds thereof, but the corporation was sole owner of both. The interest of a stockholder is only in declared dividends, though he may in some circumstances act for the benefit of the corporation: 57 Me. 143; 99 Mass. 101; 44 Ind. 509; 104 U. S. 454.

BOREMAN, J.:

This is an action brought by the appellant in the first district court, to set aside a sale of railway and other property for fraud, for inadequacy of price, and because the trustee making the sale was interested. Respondents demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained and the cause dismissed. From this judgment the appellant brings the cause to this court.

The complaint charges respondents with combining and confederating together, giving facts in detail, to defraud the appellant and other holders of certain bonds, out of the property held in trust, to secure the bonds and to get specific property at grossly inadequate price; that respondent Spackman was treasurer of all three of the companies; that respondent Lowe, who made the sale, was a stockholder, director and vice-president of one of the companies; and that both Lowe and Spackman were in collusion with the other respondents in their efforts to defraud appellants, etc.

The allegations of combination and fraud in the complaint are sufficiently specific, and the statement of facts in the complaint, taken altogether, are sufficient to support a judgment. The action of the court below in sustaining the demurrer is reversed, and the cause remanded with instructions to the court below to overrule the demurrer, with leave to the respondents to plead.

ZANE, C. J., and EMERSON, J., concurred.